UNION MUTUAL LIFE INSURANCE
COMPANY, Plaintiff,

v.

Bonita RODRIGUEZ, Alma Schmidt Rodriguez, Administratrix of the Estate of Augustin Rodriguez, deceased, and Carmen A. Rodriguez Castro, Defendants.

No. Civ. 75–1132.

United States District Court,
D. New Jersey.

Oct. 20, 1975.

McCarter & English by Eugene M. Haring, Newark, N. J., for plaintiff.

Bert Binder, Waldwick, N. J. (Samuel Schacter, New York City, of counsel), for defendants Bonita and Alma Rodriguez.

Arnold M. Smith, Paterson, N. J., for defendant Carmen A. Rodriguez Castro.

BIUNNO, District Judge.

The only question left open by the ruling of August 6, 1975 was whether the stakeholder should be obliged to pay into court not only the stake (which it has) but also interest thereon. On review of the further submissions, the court concludes that interest should be paid.

The insured died September 20, 1974. One claim was received on October 7 and another on October 8, 1974. One claimant sued in state court on November 26, 1974. The interpleader suit was not filed here until June 30, 1975. The stake was deposited July 1, 1975.

As the precedents observe, interest does not ordinarily run on the proceeds of a life insurance policy when the insurer is confronted by conflicting claims. Allowance of a reasonable time for settlement of the claim is probably the underlying rationale, because there is no way the insurer can know that the policy has matured until it receives the claim, and it cannot tender payment before then or until the claim is regularly processed. This concept obviously applies when the policy is payable as a single sum. If it is payable under a settlement option to hold the proceeds at interest, or to pay in installments with interest over some fixed term or for life, of course the contract would call for interest in any event, probably from date of maturity. Terminal dividends, and return of unearned premium, where applicable, are also usually figured as of date of death.

Perhaps the most complete review of examples where interest will accrue on a policy calling for lump sum payment (no settlement options involved) is found in *Powers v. Metropolitan, etc.*, 439 F.2d 605, at 608 (D.C.Cir.,1971). See also, 15 A.L.R.2d 473 (1951).

One of the circumstances recognized is when the insurer delays unreasonably in making a deposit in court by way of interpleader. The rationale here is obvious. Once the insurer knows that the insured has died, it knows that its obligation to pay the face amount of the policy has matured. If there be conflicting claims that prevent payment, a prudent insurer will keep the funds invested as part of its cash in short-term investments so that it can be paid when needed and meanwhile not be idle. A period of one week from the receipt of a claim from the named beneficiary should not carry interest. Settlement checks are issued for payment in that time in nearly all cases; this is traditional in life insurance. Beyond that, the insurer should be under a duty to invest the amount of the proceeds, and to transmit the earnings to the beneficiary, in order to discourage any motive for delay in order to reap a windfall.

In this view, the policy obligation would be equivalent to a demand note which carries no interest until demand for payment is made, with a 1 week grace period before interest begins to run.

The rule is a fair one, applying equally where there is but one claimant, as well as where there are multiple claimants. The lawful claimant is an innocent party who ought not to be penalized for delay because others also make claims. The insurer is also an innocent party because it is not responsible for the existence of conflicting claims. Where one of two innocent parties must stand the risk of loss, the law will place the risk on that one who can protect against loss to either. The insurer is in that position. The lawful claimant is not.

Under this view, the question of prejudgment interest is irrelevant. The obligation is a debt, and it accrues interest from one week after claim from the named beneficiary, just as an unpaid note would carry interest until paid.

The facts here underscore the soundness of the rule. The proceeds could have been interpleaded long before they were. The explanation that the insurer was trying to clear a N.Y. tax lien is not persuasive for two reasons: the potential lien did not preclude the investing of the funds on a short term basis, and in any event the N.Y. official who could claim the tax lien could have been joined as a defendant in interpleader. The federal interpleader law permits joinder of defendants in any district. See F.R. Civ.P. 22; 28 U.S.C. §§ 1335, 1397, 2361.

■ In this case, the proof of claim from the named beneficiary was received October 8, 1974. One week later was October 15, 1974. Interest will be allowed from October 15, 1974 to July 1, 1975 when the policy proceeds were deposited.

As for interest rate, the court will take judicial notice that short-term interest rates in that period were near historic highs. U.S. Treasury bills (90 day) sold in August, 1974 were at a discount to yield above 10%. There was a subsequent decline. Over all, the court views an average rate of 8% for short-term investments as fair and reasonable. Applying this rate, without compounding, for the period indicated, gives an amount of $2,838.36 for interest. This amount is payable into court.

If this amount reflects a rate sufficiently greater than the average rate earned by the stakeholder on its short-term investments over the period to be more than *de minimis*, an application for reargument on that point, supported by clear proofs of the average rate earned, will be entertained under Local Rule 12 H.

A paradox arising out of the structure of the courts as established by Congress should be noted. If a stakeholder fails to invest proceeds promptly, it will be obliged to pay what the proceeds would have earned if invested, when it pays into court. If it pays into court promptly, the payment halts the running of interest and once deposited in the registry of the court, it earns no interest at all.

Since funds in the registry of the court are in the hands of the United States, there seems to be no reason why the Congress could not provide some system under which the Treasurer of the United States could borrow those funds at interest, subject to

being drawn upon for the satisfaction of judgments, with interest on a day-to-day basis.